

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

FILED

JAN 15 2015

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

NATIONWIDE MUTUAL INSURANCE
COMPANY, et al.,

     Plaintiffs,

v.                                          Civil No. 4:10cv70

CG STONY POINT TOWNHOMES,
LLC, et al.,

     Defendants.

<u>OPINION AND ORDER</u>

This matter is before the Court on Plaintiffs' motion for summary judgment, ECF No. 112, and associated motion to strike an affidavit submitted by Defendants in opposition to summary judgment, ECF No. 121.  For the reasons set forth below, the motion to strike is **DENIED without prejudice**, and the motion for summary judgment is **GRANTED**.

### A. Background

The instant "Chinese Drywall" civil action has a lengthy and complex procedural history, the majority of which is not directly relevant to the resolution of the instant motions.  In short, it is no longer disputed in this declaratory judgment action that Defendants' claimed damages are not covered under the primary property coverage provisions of several relevant insurance policies issued by Plaintiffs because the polices contain a "pollution

exclusion" and Defendants' claimed damages result from "pollution" emitted from "Chinese Drywall" that was installed during the construction of the covered properties.  ECF No. 113 ¶ 26.

Notwithstanding Defendants' concession of such point, which was based on rulings by the United States Court of Appeals for the Fourth Circuit and the Supreme Court of Virginia, ECF No. 115-16, at 46-47, Defendants asserted at a February 28, 2014 status hearing before this Court that factual and legal disputes remained as to the applicability of several <u>secondary</u> coverage provisions contained within the relevant insurance policies, further arguing that such matters were not previously briefed because the prior summary judgment practice was limited to resolving the applicability of the "pollution exclusion," [1] <u>see generally</u> ECF No. 115-16 (hearing transcript).  Because counsel disagreed as to whether previously exchanged discovery materials precluded Defendants from pursuing coverage under the secondary coverage provisions, the Court ordered

---

[1] The pollution exclusions in the relevant policies state as follows:
   **B. EXCLUSIONS**
   1. We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other causes or event that contributes concurrently or in any sequence to the loss.
   . . .
   **i. Pollutants**
   We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified cause of loss."  But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss."
ECF No. 114-7, at 61, 63; 114-8, at 52, 54.

the parties to submit status updates after reviewing their discovery materials.  Upon receipt of the parties' status updates, the Court determined that Defendants had not waived their right to seek recovery under the secondary coverage provisions, noting that Plaintiffs had never propounded any discovery requests requiring Defendants to identify the specific policy provisions under which coverage was asserted.  ECF No. 108, at 2 n.1.  Moreover, Plaintiffs rightly conceded at the February hearing that the prior summary judgment practice was directed only at the applicability of the "pollution exclusion."[2]  Id. at 2.

Based on the above, the Court decided that the most prudent course was to permit the limited additional discovery sought by the parties to develop the facts pertinent to the potential applicability of the secondary coverage provisions, followed by the submission of supplemental summary judgment briefs.  In granting the parties' request for additional discovery, the Court required the parties to "exchange lists identifying any witnesses from whom affidavits will

---

[2] Although not filed on the docket in this case, in late 2010, Plaintiffs filed a motion in the companion case to this action seeking this Court's permission to file a separate summary judgment motion addressing only the scope and applicability of the pollution exclusion.  Case No. 4:10cv69, ECF No. 48.  Plaintiffs' filing expressly recognized that a "myriad" of other coverage issues could exist if the pollution exclusion did not resolve all issues in that case.  Id.  This Court subsequently granted Plaintiffs' motion, as well as a motion staying all discovery in the companion case, in order to permit summary judgment practice limited to the "pollution exclusion."  Case No. 4:10cv69, ECF No. 73.  On the same day such Order was entered, the Court entered a nearly identical Order in this action staying discovery in favor of summary judgment practice on the scope and applicability of the pollution exclusion.  ECF No. 44.

be submitted in support of additional summary judgment briefing." ECF No. 108, at 4.  Moreover, the Court ordered that for "each witness identified, the parties should also provide a short summary of the subject matter of the planned affidavits."  Id. (emphasis added). Such requirement was imposed in order to allow opposing counsel to determine which individuals he may want to depose and to permit counsel to identify potential rebuttal witnesses.  The Court thereafter granted the parties' joint request for an extension of the briefing schedule.  Plaintiffs' supplemental summary judgment motion and associated motion to strike are now fully briefed and are therefore ripe for review.

## B. Motion to Strike

Plaintiffs' motion to strike seeks to exclude an affidavit submitted by named defendant "Steven Middleton," based on Defendants' alleged failure to comply with this Court's prior Order instructing Defendants to provide a "short summary of the subject matter of the planned affidavits." ECF No. 108, at 4.  Notably, one of the key, if not the most important, remaining factual questions in this case was whether there had been an "Equipment Breakdown" at any of the insured properties.  Defendants therefore identified four individuals (later reduced to three) as potential witnesses who may submit an affidavit on the topic of alleged HVAC system breakdowns at the covered properties, including one individual that would purportedly state under oath that "the HVAC systems in the affected

4

property broke down and that he repaired it." ECF No. 123-1.
Additionally, Defendants identified Mr. Middleton as potentially
submitting an affidavit on five topics, none of which mentioned HVAC
systems or "equipment breakdowns." Id. Plaintiffs deposed all
three of Defendants' HVAC witnesses, but did not depose Mr.
Middleton.

Plaintiffs thereafter submitted their supplemental summary
judgment motion relying on the deposition testimony of the HVAC
witnesses designated by Defendants, who testified that they had no
knowledge of an HVAC "breakdown" at any of the insured properties
and/or that their company invoices failed to disclose any
"breakdowns." ECF Nos. 115-14, 115-15, and 123-4. Defendants
subsequently filed a motion in opposition to summary judgment
supported not by an affidavit from any of the HVAC witnesses, but
instead by Mr. Middleton's affidavit, which focused almost
exclusively on the HVAC systems at the subject properties.[3] ECF No.
117. Such affidavit, in a manner largely devoid of factual details,
asserts that an HVAC "breakdown" occurred at each of the five subject

---

[3] Defendants assert that their prior disclosure as to the topics to be
addressed by Mr. Middleton was sufficient because Defendants had indicated
that Mr. Middleton may provide an affidavit addressing "remediation scope
of work for each unit." ECF No. 123-1. Responding to such assertion,
Plaintiffs cite to a letter in the record that arguably suggests that
"remediation work" is unrelated to the determination of if, how, or when,
"breakdowns" of mechanical equipment occurred, and instead involves
removing and replacing both the "Chinese Drywall" from the covered
properties as well as any and all fixtures, pipes, equipment, insulation,
carpets and other household items that were or may have been damaged in
any way from the imported drywall. ECF No. 114-2.

properties in or around June of 2008. Moreover, such affidavit challenges the knowledge base of Defendants' own HVAC witnesses, and their businesses, appearing to assert, without disclosing any details, that some other unidentified person or business performed HVAC repairs on all five covered properties at some point during 2008.

The pending motion to strike Mr. Middleton's affidavit based on Defendants' alleged failure to comply with this Court's Order appears to be premised on this Court's "'inherent power'" to control litigation through regulating "'conduct that abuses the judicial process.'" Rutledge v. City of Danville, Va., No. 4:13cv66, 2013 WL 6804697, at *6 (W.D. Va. Dec. 20, 2013) (quoting Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001); see Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404-05 (9th Cir. 2010) (recognizing that a federal district court's "inherent power" to control its docket "includes the power to strike items from the docket as a sanction for litigation conduct"). Relief could also be warranted pursuant to Rule 37 of the Federal Rules of Civil Procedure, as such Rule discusses sanctions that apply when a party fails to comply with a court's discovery order or fails to disclose or supplement certain information. Fed. R. Civ. P. 37(b)(2), (c). Pursuant to Rule 37, the Court may, as a sanction for noncompliance, "prohibit the disobedient party from . . . introducing designated matters into evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii).

6

Regardless of the legal basis for Plaintiffs' motion, which seeks to strike what Plaintiffs characterize as a "self-serving" affidavit submitted without proper notice, this Court is not inclined to impose sanctions without first conducting a hearing to allow the Court to determine if the sanction requested is warranted based on the facts specific to this case.  However, the Court declines to hold a hearing at this time to further inquire into such matter because summary judgment is appropriate regardless of whether the disputed affidavit is considered.  Plaintiffs' motion to strike is therefore **DENIED**, <u>**without prejudice**</u> to Plaintiffs' right to refile such motion should any future rulings on summary judgment become necessary in this case.[4]

## C. Summary Judgment

The Federal Rules of Civil Procedure provide that a district court shall grant summary judgment in favor of a movant if such party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

---

[4] Although this Court does not reach the merits of the motion to strike, in light of the importance of the "equipment breakdown" issue, Plaintiffs appear to advance a strong argument that they were not fairly apprised of the fact that Mr. Middleton intended to provide testimony on such topic. Plaintiffs' position appears to be strengthened not only by the fact that Defendants designated multiple witnesses to testify <u>to this precise and potentially critical factual issue</u>, but by the fact that after such witnesses' deposition testimony did not support Defendants' theory of the case, Mr. Middleton's subsequent affidavit challenged the knowledge base of <u>Defendants' own HVAC witnesses</u>.  Although the Court makes no credibility determinations on summary judgment, the manner in which Mr. Middleton's affidavit is drafted offers no detailed facts in support of the assertion that around the same time in 2008, there were "breakdowns" of HVAC equipment at each of the five subject properties.

P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48 (1986). A fact is "material" if it "might affect the outcome of the suit," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

In resolving a summary judgment motion, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In doing so, the judge must construe the facts and all "justifiable inferences" in the light most favorable to the non-moving party, and the judge may not make credibility determinations. Id. at 255; see McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) ("It is an axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.") (internal quotation marks and citations omitted).

## 1.

Plaintiffs' opening brief in support of summary judgment addresses multiple policy clauses providing secondary coverage that have recently been identified by Defendants as potentially applicable even in the absence of primary coverage under such

policies.  ECF No. 113.  However, Defendants' opposition to summary judgment, which does not expressly contest the majority of Plaintiffs' statement of "undisputed facts," opposes summary judgment only as to the "Equipment Breakdown" secondary coverage provision, which includes within it a subclause governing "Hazardous Substances."  ECF No. 116.  Pursuant to the Local Rules of this Court, "the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  E.D. Va. Loc. Civ. R. 56(B). Accordingly, taking as true all of the unchallenged facts set forth in Plaintiffs' Memorandum, and for the reasons set forth in Plaintiffs' brief in support of summary judgment, ECF No. 113, the Court finds that there is no coverage under the secondary coverage provisions abandoned by Defendants, and summary judgment is therefore **GRANTED** in favor of Plaintiffs on these issues.[5]

2.

In analyzing the propriety of summary judgment as to the "Equipment Breakdown" secondary coverage provisions in the relevant policies, to include the attendant "Hazardous Substances" subclauses

---

[5] It appears that Defendants abandoned such secondary coverage provisions for either, or both, of the following reasons: (1) such provisions, by their express terms, are only applicable when there is a "covered cause of loss" that is not otherwise excluded under the policy terms, and here, there is not a covered cause of loss because the "pollution exclusion" is applicable; and/or (2) such provisions expressly require that the policy holder provide notice of a claim within 180 days, and here, there is no evidence that such notice was provided.

found within such provisions, the Court first considers the policy language itself, which states as follows:

> 5.  ADDITIONAL COVERAGES
>      . . .
>
>    o.  **Equipment Breakdown**
>        1) We will pay for loss caused by or resulting from an "accident" to "covered equipment".
>        . . .
>        2) The following coverages also apply to loss caused by or resulting from an "accident" to "covered equipment". These coverages do not provide additional amounts of insurance.
>            . . .
>
>            b) **Hazardous Substances**
>            We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance". This includes the additional expenses to clean up or dispose of such property.

ECF No. 114-7, at 53; see ECF No. 114-8, at 45.[6]   It appears undisputed that an "accident" to "covered equipment" is defined by the policies in a manner that would generally include the "mechanical breakdown" of an HVAC system.  ECF No. 114-7, at 76; see ECF No. 114-8, at 66.

a.

Plaintiffs' brief in support of summary judgment first argues, assuming that the challenged Middleton affidavit is stricken, that summary judgment is appropriate because none of Defendants' designated HVAC witnesses were able to advance any evidence suggesting that a "mechanical breakdown" of the HVAC systems ever

---

[6] The Equipment Breakdown provision in the policy available at ECF No. 114-8 differs slightly from the above, with the first subsection stating as follows: "We will pay for direct physical damage to Covered Property caused by or resulting from an 'accident' to 'covered equipment'. . . ."

occurred at any of the covered properties.  Because the Court has,
for the reasons discussed above, denied Plaintiffs' motion to strike
such affidavit, summary judgment is not appropriate on this ground
at this time.[7]

b.

Plaintiffs' summary judgment brief goes on to argue that, even
assuming that an HVAC mechanical breakdown occurred at each covered
residence as claimed by Mr. Middleton, no coverage exists under the
policies because the facts of this case demonstrate that no further
losses resulted from such breakdowns.  Plaintiffs appear to
acknowledge that secondary damages resulting from an "accident" to
"covered equipment," including an HVAC system, are generally covered
under two of the policies still at issue in this case.  However,
Plaintiffs argue that because the undisputed facts demonstrate that
the breakdown of the HVAC systems at issue did not, in turn, cause
any additional damages, and certainly did not cause the release of
a "hazardous substance" leading to additional damages, there is no
coverage under the "Equipment Breakdown" policy provisions.

Defendants respond to Plaintiffs' position by appearing to
contend that the "Equipment Breakdown" secondary coverage provisions
extend to cover the equipment itself, not just damages resulting from
the breakdown of such equipment.  Additionally, Defendants appear

---

[7] If Plaintiffs' motion to strike the Middleton affidavit were granted,
summary judgment would unquestionably be appropriate on this basis.

to seek to characterize the "Hazardous Substances" subclause that falls within the "Equipment Breakdown" provision as a broad coverage provision that trumps the "pollution exclusion" and applies to any damages caused by the release of a hazardous substance regardless of whether such release was caused by, or results from, an equipment breakdown.   In support of such argument, Defendants contend that any other interpretation of the "Hazardous Substances" subclause would improperly fail to ascribe any meaning to such policy language.   See PMA Capital Ins. Co. v. US Airways, Inc., 271 Va. 352, 358 (2006) ("'No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.'" (quoting D.C. McClain, Inc. v. Arlington County, 249 Va. 131, 135-36 (1995))); Seals v. Erie Ins. Exchange, 277 Va. 558, 562 (2009) ("'Each phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein.'" (quoting Floyd v. Northern Neck Ins. Co., 245 Va. 153, 158 (1993))).

    After considering the parties' competing arguments, and the relevant policy provisions as a whole, the Court agrees with Plaintiffs' interpretation of the "Equipment Breakdown" provisions. See Lansdowne Development Co., L.L.C. v. Xerox Realty Corp., 257 Va. 392, 401 (1999) ("[W]hen considering the meaning of any part of a

12

contract, [the Supreme Court of Virginia] will construe the contract as a whole."). First, the "Equipment Breakdown" secondary coverage provisions indicate on their face that they are not directed at the equipment being discussed therein, but instead operate to extend coverage in situations where an equipment failure is the proximate cause of <u>additional damages</u>. Such secondary coverage provisions expressly state in clear terms that they cover losses "<u>caused by</u> or <u>resulting from</u>" an "accident," to covered equipment. ECF No. 114-7, at 53 (emphasis added); <u>see</u> <u>Pacific Ins. Co. v. American Nat. Fire Ins. Co.</u>, 148 F.3d 396, 405 (4th Cir. 1998) (indicating that "Virginia strictly adheres to the 'plain meaning' rule, entitling the parties to rely on the express terms of the written agreement," and therefore, when a contract is "'complete on its face and is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself'" (quoting <u>Lerner v. Gudelsky Co.</u>, 230 Va. 124, 132 (1985))). Notably, nowhere in the "Equipment Breakdown" provision does the policy language state that secondary coverage is extended to the equipment itself for the damages that triggered the equipment breakdown.[8]

---

[8] Other written provisions appearing in the section of the policies providing secondary coverage support such "plain meaning" interpretation, as such secondary coverage provisions reveal that when additional coverage is being extended to <u>the specific property being discussed</u> therein, the policy language clearly reflects such fact. <u>See</u> ECF No. 114-7 at 53 ("Perishable Goods" subclause contained within the Equipment Breakdown provision indicating that the insurer "will pay for [the] loss of 'perishable goods' due to spoilage"); <u>id.</u> at 52 ("Exterior Building Glass" clause indicating that coverage extends to "direct physical loss of or

While Defendants' recently submitted affidavit, taken at face value, demonstrates that there was an "accident" to each of the relevant HVAC systems in 2008, there is no evidence of any kind demonstrating that there was a "loss caused by or resulting from" any of such accidents.[9]  Summary judgment is therefore **GRANTED** in favor of Plaintiffs because the only damages supported by the record are the damages to the HVAC equipment that purportedly caused the HVAC equipment to breakdown, and there is: (1) no primary coverage for such damage because it was caused by "pollution" emitted from Chinese Drywall; and (2) there is no secondary coverage for such damage because there is no evidence demonstrating that any further damages occurred because the HVAC system broke down.

---

damage to [exterior] glass"); id. at 56 ("Appurtenant Structures" clause indicating that coverage extends to "direct physical loss of or damage to any separate garages, storage buildings, [etc.]").

[9] Defendants assert that an "accident" occurred based upon the "mechanical breakdown" portion of the "accident" definition.  It appears that such assertion is misguided.  A "mechanical breakdown" is a "functional defect in the moving parts of machinery which caused it to operate improperly or cease operating." Connie's Constr. Co. v. Continental Western Ins. Co., 227 N.W.2d 204, 207 (Iowa 1975); see Standard Structural Steel Co. v. Bethlehem Steel Corp., 597 F. Supp. 164, 196-97 (D.C. Conn. 1984) (adopting the same definition for "mechanical breakdown" based on Connie's Construction and an earlier opinion issued by the Supreme Court of Arkansas).  Middleton's affidavit states that mechanical breakdowns occurred "after copper items were blackened by a slimy substance." ECF No. 117, ¶ 4.  Middleton goes on to say that the "blackened copper resulted from contamination by materials connected to Chinese drywall." Id. ¶ 7.  Therefore, Middleton's assertion that the Chinese drywall was the efficient cause of the breakdown undercuts any assertion that coverage exists for such HVAC equipment because the breakdown was not the cause of the loss, but rather an effect of the Chinese drywall.  See Connie's Constr. Co., 227 N.W.2d at 207 (noting that where plaintiff's employee installed cable of excessive length on a crane, thereby causing damage to the crane, the mechanical breakdown of the crane was an effect, not the cause of plaintiff's loss, as the loss was due to action of plaintiff's employees).

The Court's above conclusion is not altered by considering the "Hazardous Substances" subclause contained within the "Equipment Breakdown" secondary coverage provision. Such subclause, by its express terms, applies when an "accident" to "covered equipment" results in or causes contamination from a hazardous substance. Here, assuming that each of the relevant HVAC systems suffered a "breakdown" during 2008, there is still no evidence even suggesting that any such "breakdown" caused or otherwise resulted in contamination from a hazardous substance, and thus, such policy provision is simply not applicable. To further illustrate such point, just like the "Perishable Goods" subclause contained within the "Equipment Breakdown" provision is wholly irrelevant to the pending motion because no goods perished as a result of the HVAC systems failing to operate, the "Hazardous Substances" subclause is wholly irrelevant because no hazardous substances were released as a result the HVAC systems failing to operate. Summary Judgment is therefore **GRANTED** in favor of Plaintiffs notwithstanding Defendants' efforts to invoke the "Hazardous Substances" <u>subclause</u> of the Equipment Breakdown additional coverage provision.

In reaching the above conclusion, the Court has considered, and rejected, Defendants' argument that such a finding would render the "Hazardous Substances" subclause illusory when read in conjunction with the policies' "pollution exclusions." Contrary to Defendants' suggestion, the "Hazardous Substances" <u>subclause</u> is not a

stand-alone policy provision broadly extending coverage to damages
caused by the release of hazardous substances.   Rather, it is a
subclause  contained  with  the  "Equipment  Breakdown"  additional
coverage provision that extends coverage only in the specifically
defined circumstances (not before this Court) that occur when an
"accident" to covered equipment causes or otherwise results in the
release of a Hazardous Substance and that release, in turn, damages
covered property.   See ECF No. 114-7, at 53 § o.2 (preamble to the
several subclauses that are found within the "Equipment Breakdown"
provision, the preamble stating that "[t]he following coverages also
apply to loss caused by or resulting from an 'accident' to 'covered
equipment'").   Because the facts before the Court do not suggest that
any equipment breakdowns led to contamination, there is no relevant
"conflict" in the policy language for this Court to resolve.

However, assuming that such facts were before the Court, the
Court would agree with Defendants that the "Hazardous Substances"
subclause must be given force in those limited circumstances.   To
illustrate such point by way of a hypothetical, if the facts of this
case involved an HVAC system that broke down, and such breakdown
caused the release of a Hazardous Substance, such as Freon, the Court
would agree with Defendants that the Hazardous Substances subclause
contained within the Equipment Breakdown provision would operate to
provide coverage for damages caused by the Freon notwithstanding the
policies' more general "pollution exclusion."   This is so because

the "Equipment Breakdown"/"Hazardous Substances" provisions are by
their terms specifically directed to such defined fact pattern, and
thus, to the extent any internal "conflict" exists in the policy
language, the specific provisions would override the broader and more
generic "pollution exclusion." See Bott v. N. Snellenburg & Co.,
177 Va. 331, 339 (1941) (applying "the rule, where there is a
repugnancy, a general provision in a contract must give way to a
special one covering the same ground"); Chantilly Const. Corp. v.
Com., Dept. of Highways and Transp., 6 Va. App. 282, 294 (1988)
("[A]ny apparent inconsistency between a clause that is general and
broadly inclusive in character, and a clause that is more specific
in character, should be resolved in favor of the latter" (citing
Mutual Life Ins. Co. v. Hill, 193 U.S. 551, 558 (1904))). Similarly,
if this Court ultimately concluded in such circumstances that these
two "conflicting" policy provisions resulted in an "ambiguity,"
relevant rules of contract construction would appear to support a
ruling in favor of coverage. See Lincoln Nat. Life Ins. Co. v.
Commonwealth Corrugated Container Corp., 229 Va. 132, 137 (1985)
(indicating that if "policy language is ambiguous, it will be
construed strictly against the insurer" and that when "susceptible
of two constructions, one of which would affect coverage and the other
would not, the court will adopt that construction which will afford
coverage").

Even though coverage appears to exist in these defined hypothetical circumstances, as outlined above, the parties have not called the Court's attention to any evidence in the record suggesting that an "accident" to covered equipment caused, resulted in, or otherwise contributed to any type of further damage, let alone damage caused by a hazardous substance.   Contrary to Defendants' contention that the "Hazardous Substances" subclause is at risk of being rendered illusory, it appears to the Court that such subclause effectively operates to extend coverage to a defined fact pattern which, absent such specific secondary coverage subclause, would most likely be barred by the broadly applicable pollution exclusion. Such interpretation of the clause as applied to the fact pattern to which it is expressly directed does not, however, as argued by Defendants, warrant an interpretation whereby such subclause acts to universally trump the pollution exclusion whenever a hazardous substance is released, regardless as to whether such release was the result of an "equipment breakdown."[10]   Defendants' interpretation of

---

[10]   Arguably, a more difficult question would arise in a scenario similar to the hypothetical discussed above, if the initial trigger for the HVAC system breaking down was "pollution."   Pursuant to the broadly phrased pollution exclusion, all damages, including "indirect" damages, that result from "pollution" are not covered unless the pollution is caused by a "specified cause of loss" (defined as fire, explosion, vandalism, etc.) or the pollution itself causes a "specified cause of loss" which then in turn causes additional damages (the additional damages being what is covered).   Notably absent from the pollution exclusion is any exception discussing an "accident" to covered equipment.   The absence of such a reference is particularly notable because the policy exclusions labeled "Other Types of Loss," expressly carve out an exception for both scenarios involving a "specified cause of loss" and those involving an "accident"

such subclause is therefore rejected, and for all of the reasons
discussed herein, Summary Judgment is **GRANTED** in favor of
Plaintiffs.[11]

### D. Summary

For the reasons sets forth above, Plaintiffs' motion to strike
is **DENIED without prejudice**. ECF No. 121. Plaintiffs' motion for
summary judgment is **GRANTED**. ECF No. 112. Accordingly, judgment
will be entered in Plaintiffs' favor because: (1) as conceded by
Defendants, there is no primary coverage for any damages at the five
remaining Stony Point Townhome Units based on the applicability of
the "pollution exclusion"; and (2) as set forth above, there is no
secondary coverage based on the "additional coverage provisions"
raised by Defendants in this matter. Judgment will also be entered
in Plaintiffs' favor on Defendants' breach of contract counterclaim,
as such claim is dependent upon the policies extending coverage to
the damages suffered by Defendants.

---

to covered equipment. ECF No. 114-7, at 64; ECF No. 114-8, at 55. This
Court, however, need not endeavor to resolve such policy interpretation
questions because they depend on a hypothetical fact pattern markedly
different from the facts before the Court. Here, all the damages at issue
were directly caused by pollution emanating from Chinese Drywall. Even
assuming the relevant HVAC systems suffered an "accident," no further loss
resulted from such accident. Accordingly, the "Equipment Breakdown"
provision does not provide coverage, nor does the "Hazardous Substances"
subclause, for the simple reason that there is no evidence that the HVAC
systems' breakdowns contributed in any way to Defendants' loss.

[11] This Court does not squarely address the potential applicability of the
"corrosion," "latent defect" or "negligent work" policy exclusions because
it is undisputed that the pollution exclusion bars primary coverage, and
the Court finds that the "Equipment Breakdown" secondary coverage provision
is simply not applicable based on the facts of this case.

There being no remaining issues in this case, a separate judgment shall issue in Plaintiffs' favor, as outlined above.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED**.

/s/ Mark S. Davis

Mark S. Davis
United States District Judge

United States District Judge

Norfolk, Virginia
January 15 , 2015